# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

T.G.,

      Plaintiff,

vs.                                 Cause No. 1:19-cv-1116 JFR/JHR

BOARD OF COUNTY COMMISSIONERS
OF COUNTY OF RIO ARRIBA ET AL.,

      Defendants.

### DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF COUNTY OF RIO ARRIBA, RIO ARRIBA SHERIFF JAMES LUJAN AND RIO ARRIBA COUNTY SHERIFF'S DEPUTY LEON GALLEGOS' JOINT MOTION FOR SUMMARY JUDGMENT (QUALIFIED IMMUNITY RAISED)

COME NOW Defendants Board of County Commissioners of County of Rio Arriba and Rio Arriba County Sheriff James Lujan, by and through their counsel of record Brennan & Sullivan (James P. Sullivan and Gabriela Delgadillo, appearing), and Rio Arriba County Sheriff's Deputy Leon Gallegos, by and through his counsel of record, YLAW, P.C. (Robert W. Becker, appearing), and move for summary judgment based on qualified immunity and/or on the merits of all claims asserted in the lawsuit. The motion is opposed. As grounds for their motion, the Defendants state the following.

## INTRODUCTION

This matter arises out of an unfortunate incident of horseplay between Plaintiff Timothy Gallegos, a Detention Center Officer at the Rio Arriba County Adult Detention Center, and Rio Arriba County Sheriff's Deputy Leon Gallegos (no relation). Deputy Gallegos had arrived at the Detention Center to pick up some inmates for court. He announced his presence at the gate by blowing his air horn.

Timothy Gallegos exited the Detention Center, approached Deputy Gallegos who was now out of his vehicle, and scolded Deputy Gallegos in a joking manner not to blow his horn at "his jail." Deputy Gallegos, joking in return, replied that the jail did not belong to Timothy Gallegos.

Deputy Gallegos then pulled his taser and pointed it at Timothy Gallegos' groin, intending to provide Timothy Gallegos with what is known as an "arc" or "spark warning." Unfortunately, the taser that Deputy Gallegos was recently issued operated differently than the taser Deputy Gallegos had been carrying and had experience with. Rather than providing an arc or spark warning, the taser deployed two darts into Timothy Gallegos' groin.

Recognizing what had happened, Deputy Gallegos immediately turned off the taser. Timothy Gallegos did not receive any electrical current. The darts did not penetrate his trousers. But he did receive a blunt force impact to his groin, causing him to go to the ground in pain.

After a brief period, Timothy Gallegos was able to gather himself and return to the inside of the Detention Center under his own power. Deputy Gallegos retrieved the inmates for court and at the conclusion of his duties, wrote a report to his captain as to what occurred. He was placed on administrative leave and eventually suspended for one week without pay. Deputy Gallegos did not contest his suspension.

Timothy Gallegos filed suit against Deputy Gallegos, the Board of County Commissioners of Rio Arriba County and Rio Arriba County Sheriff James Lujan in state district court. Three underlying federal claims were alleged against Deputy Gallegos, an excessive force claim under the Fourth Amendment, violation of bodily integrity under the Fourteenth Amendment and a denial of equal protection claim under the Fourteenth Amendment based on same sex harassment. A state law claim for battery was also asserted against Deputy Gallegos. Doc. 1, Exhibit A.

Federal claims were asserted against the Board of County Commissioners for municipal liability and Sheriff Lujan for failure to train and supervise his deputies after issuance of a new

model taser.  A state law claim for respondeat superior liability was also asserted against the County for Deputy Gallegos' alleged battery. Additionally, Timothy Gallegos brought a separate claim against all Defendants for loss of consortium. Doc. 1, Exhibit A.

Defendants removed the suit to this Court and now move for summary judgment based on qualified immunity and on the merits.  Since Timothy Gallegos was not seized, there can be no claim for excessive force under the Fourth Amendment against Deputy Gallegos.  The violation of bodily integrity claim also fails because the Supreme Court has declined to extend substantive due process protection to safe working conditions, and because Timothy Gallegos was never restrained.

As to the same sex harassment equal protection claim, neither the Supreme Court, the Tenth Circuit nor a court in this district has recognized the existence of such a claim.  Timothy Gallegos references *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998) in his Complaint as support for his claim.  But *Oncale* is a Title VII discrimination case, not an equal protection case, and Timothy Gallegos has not timely filed a claim of discrimination with the Equal Employment Opportunity Commission.  More than 300 days has expired since the incident.  As a consequence, Timothy Gallegos is time barred from bringing such a claim, and this Court has no subject matter jurisdiction to hear any such claim if that is, in reality, what Timothy Gallegos is alleging.

Timothy Gallegos filed a claim for worker's compensation benefits and is receiving treatment pursuant to his claim.  His worker's compensation claim bars his state law battery claim due to the exclusivity provisions of the New Mexico Worker's Compensation Act.

Without actionable underlying federal claims against Deputy Gallegos, no claims for municipal liability against the County or failure to train and supervise claims against Sheriff Lujan may be maintained.  The same is true for the state law respondeat superior claim against the County. Without an underlying battery claim against Deputy Gallegos for which immunity has been waived under the New Mexico Tort Claims Act, no claim for respondeat superior liability may be

maintained against the County. Finally, Timothy Gallegos has no standing to bring a loss of consortium claim for himself, as that is a derivative claim arising from an injury to another person.

There are no disputed issues of material fact. The incident was captured on the Detention Center's video surveillance system. For the reasons that follow, the Court should grant Deputy Gallegos and Sheriff Lujan qualified immunity from suit on the federal claims, summary judgment as to the County on the federal claim, and summary judgment as to the County and Deputy Gallegos on the state law claims.

### STATEMENT OF UNDIPUTED MATERIAL FACTS

1.      Leon Gallegos has been a deputy with the Rio Arriba County Sheriff's Office since 2013. Declaration of Leon Gallegos, Exhibit 1, ¶ 1.

2.      In 2019, Deputy Gallegos was assigned to court security, civil process and patrol. Gallegos Declaration, Exhibit 1, ¶¶ 2-3.

3.      Prior to May of 2019, Deputy Gallegos carried an XP-26 taser on his Sam Brown belt. Exhibit 1, ¶ 4.

4.      All of the functions of the XP-26 taser are activated from the electronic trigger mechanism. Exhibit 1, ¶ 4.

5.      To deploy the XP-26 taser in dart mode, a cartridge needs to be inserted in the taser. To activate, the electronic trigger is pulled. Exhibit 1, ¶ 4.

6.      To deploy the XP-26 taser in drive stun mode, the cartridge containing the darts needs to be removed from the taser. To activate a drive stun, the electronic trigger is pulled. Exhibit 1, ¶ 4.

7.      To display what is referred to as an "arc" or "spark" warning, the cartridge containing the darts needs to be removed from the taser. To activate a visible arc or spark warning,

which visibly displays an electrical charge between the two prongs of the taser used for drive stunning, the electronic trigger is pulled.  Exhibit 1, ¶ 4.

8.      In May of 2019, Deputy Gallegos received an X-2 taser to replace the XP-26 taser he was carrying.  He was advised that the X-2 taser operated differently than the XP-26 taser, but he did not train on the X-2 taser after it was issued to him.  Exhibit 1, ¶ 5.

9.      The X-2 taser contains two cartridges of darts which do not have to be removed in order to deploy the X-2 taser in drive stun mode or to deploy an arc warning.  Moreover, not all of the functions of the X-2 taser operate off of the electronic trigger mechanism.  Exhibit 1, ¶ 6.

10.      To deploy the X-2 taser in dart mode, the electronic trigger must be pulled, similar in operation to the XP-26 taser.  Exhibit 1, ¶ 6.

11.      To deploy the X-2 taser in drive stun or arc warning mode, a button on either side of the taser needs to be depressed.  Two buttons are provided for ambidextrous usage.  Exhibit 1, ¶ 6.

12.      On June 3, 2019, Deputy Gallegos was on duty in full uniform and in a marked patrol unit.  He was assigned to pick up some inmates at the Rio Arriba County Adult Detention Center in Tierra Amarilla and transport them to court.  Exhibit 1, ¶ 7.

13.      Accompanying Deputy Gallegos on this assignment was Deputy Isaiah Anaya.  Deputy Anaya was in his own marked patrol unit behind Deputy Gallegos.  Following him in a transport van was Transport Officer Ronald Campos.  Exhibit 1, ¶ 7.

14.      As Deputy Gallegos approached the security gate of the exterior perimeter to the Rio Arriba County Adult Detention Center, Deputy Gallegos deployed his air horn to alert Detention Center staff to open the gate.  He did this because the call button on the gate was inoperable.  Exhibit 1, ¶ 8.

15.      The gate was opened, and Deputy Gallegos proceeded into the yard of the Detention Center.  Exhibit 1, ¶ 9.

16.     As Deputy Gallegos was proceeding through the yard, Detention Officer Timothy Gallegos exited the side door of the Detention Center.  Exhibit 1, ¶ 10.

17.     Deputy Gallegos has known Timothy Gallegos for six (6) years.  He considers Timothy Gallegos to be a friend.   Exhibit 1, ¶ 10.

18.     Deputy Gallegos drove toward the sally port area and stopped as he approached it. Exhibit 1, ¶ 11.

19.     Deputy Anaya pulled in behind Deputy Gallegos, followed by Transport Officer Campos, Exhibit 1, ¶ 11.

20.     Deputy Gallegos exited his patrol unit to secure his service weapon in the trunk as he was not allowed to enter the Detention Center armed.  Exhibit 1, ¶ 12.

21.     As he opened the trunk, Timothy Gallegos approached Deputy Gallegos and stated in a joking manner not to honk his horn at his jail.  Exhibit 1, ¶ 13.

22.     Timothy Gallegos closed distance.  Deputy Gallegos replied in a joking manner that the jail was not Timothy Gallegos' jail.  Exhibit 1, ¶ 14.

23.     As the two were joking with one another, Deputy Gallegos pulled his X-2 taser from his Sam Brown belt and pointed it at Timothy Gallegos' groin area, intending to display an arc warning to him.  Exhibit 1, ¶14.

24.     Unfortunately, Deputy Gallegos' muscle memory from using the XP-26 taser took over and he pulled the electronic trigger rather than pushing the arc button on the side of the X-2 taser.  Exhibit 1, ¶ 14.

25.     To Deputy Gallegos' surprise, the X-2 deployed in dart mode and the darts struck Timothy Gallegos in the groin area.  Exhibit 1, ¶15.

26.     Upon realizing what had happened, Deputy Gallegos immediately turned the X-2 taser off.  Exhibit 1, ¶15.

6

27.    Timothy Gallegos appeared to be in pain.  He pulled the darts out of his trousers. Exhibit 1, ¶ 16.

28.    The darts did not penetrate Timothy Gallegos' trousers.  He received no electrical charge from the taser but did receive a blunt force impact to his groin that appeared to cause him pain. Exhibit 1, ¶ 16.

29.    Deputy Gallegos was in shock by what occurred.  He asked Timothy Gallegos if he was ok.  Timothy Gallegos said he was.  Exhibit 1, ¶17.

30.    Deputy Gallegos retrieved the darts and connected wires and secured them in the trunk of his patrol unit.  Timothy Gallegos walked into the Detention Center under his own power. *Exhibit 1, ¶ 18.*

31.    Deputy Gallegos, Deputy Anaya and Transport Officer Campos entered the Detention Center and retrieved the inmates who were scheduled for court.  Exhibit 1, ¶ 18.

32.    After completing the inmate transport, Deputy Gallegos returned to the office and wrote a memorandum to Captain Merrified as to what occurred.  Exhibit 1, ¶ 19.

33.    Deputy Gallegos was placed on administrative leave with pay and ultimately disciplined without pay for 40 hours for his conduct.  Deputy Gallegos did not contest his suspension.  Exhibit 1, ¶ 20.

34.    Deputy Gallegos never had any intention to seize, injure or sexually harass Timothy Gallegos in any way.  Exhibit 1, ¶ 21. He engaged in horseplay with Timothy Gallegos, a friend, unrelated to his official duties as a deputy at that moment in time.  Exhibit 1, ¶ 21.

35.    The incident was captured on the Detention Center's video surveillance system.  A true and accurate copy of the recording depicting what occurred is attached as Exhibit 2. Declaration of Larry DeYapp at Exhibit 2, with attached surveillance footage at sub-exhibit 2A.

36.     Timothy Gallegos made a claim for worker's compensation benefits over the incident and is receiving those benefits as permitted under the Worker's Compensation Act. Declaration of Sophie Martinez at Exhibit 3.

37.     Timothy Gallegos has not filed a claim for discrimination with the Equal Employment Opportunity Commission for what he alleges is same sex harassment.  More than 300 days has elapsed since the date of the incident.  Declaration of Annabelle Almager at Exhibit 4.

## STANDARD OF LEGAL REVIEW

### A.     Legal Standard for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(a). The moving party "bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing to *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986)). The burden then shifts to the opposing party to the motion who "must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991)).

### B.     Legal Standard for Qualified Immunity

The qualified immunity doctrine applies to public officials, including law enforcement officers, acting in their individual capacities. *Brandon v. Holt*, 469 U.S. 464, 472-73 (1985). Under the doctrine, public officials are immune from suit unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *City & Cnty. of San Francisco v. Sheehan,* 135 S.Ct. 1765, 1774 (2015) (internal citation omitted) (emphasis added).

8

A right is not clearly established unless the "'right's contours were sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it,' meaning that 'existing precedent…placed the statutory or constitutional question beyond debate." *Id.* (citing to *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)). Where a defendant has asserted qualified immunity, a plaintiff seeking to overcome the defense "must satisfy a heavy two-part burden by showing: the defendant violated a constitutional or statutory right, and the right was "clearly established" at the time of the conduct in question. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007. If the plaintiff fails to carry either part of the two-part burden, the defendant is entitled to qualified immunity. *Albright v. Rodriquez,* 51 F.3d 1531, 1535 (10th Cir. 1995). The court may evaluate either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The "clearly established" prong of the qualified immunity test is a very high burden for a plaintiff. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. at 2083. "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 132 S. Ct. at 2093 (quoting *Ashcroft v. al-Kidd,* 131 S. Ct. at 2083).

The Tenth Circuit recognizes that courts "must scrupulously adhere to our longstanding duty to ascertain clear law (clear answers) that would apply to the situation at hand." *Quinn v. Young*, 780 F.3d 998, 1005, (10th Cir. 2015). And in recent years the Supreme Court has:

> . . . repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.

*Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255, 259 (2015) (citations and internal quotation marks omitted).  This sentiment was re-emphasized by the Supreme Court in *White v. Pauly*, 2017 WL 69170 *4 (2017), and most recently in the Supreme Court's per curiam opinion in *City of Escondido v. Emmons,* 139 S.Ct. 500 (2019), where the Court stated emphatically:

> Under our cases, the clearly established right must be defined with specificity.  'This Court has repeatedly told courts. . .  not to define clearly established law at a high level of generality.' *Kisela v Hughes*, 584 S.Ct. 1148, 1152 (2018).

### MEMORANDUM OF POINTS AND AUTHORITIES

I.       **Count I of the Complaint, Alleging Excessive Force Under the Fourth Amendment, Fails as a Matter of Law.**

        1.       **Because Timothy Gallegos was never seized, there can be no excessive force claim under the Fourth Amendment.**

Count I of Timothy Gallegos' Complaint attempts to establish a Fourth Amendment claim of excessive force but fails to do so. In order to prevail on a Fourth Amendment claim of excessive force, Timothy Gallegos must first show that a seizure occurred. *See Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000), *citing Brower v. County of Inyo*, 489 U.S. 593, 599, 103 L. Ed. 2d 628, 109 S. Ct. 1378 (1989).  Timothy Gallegos was never seized in any fashion by Deputy Gallegos. In fact, it cannot even be said that it was the intent of Deputy Gallegos to seize Timothy Gallegos. Nor did Timothy Gallegos allege a seizure in his Complaint. The Tenth Circuit has consistently held that without a seizure, there can be no violation of the Fourth Amendment and no claim of excessive force. *Jones v. Norton*, 809 F.3d 564, 575 (10th Cir. 2015).  Accordingly, because there was no seizure, there was no violation of Timothy Gallegos' Fourth Amendment rights.

**2.**     **Even if the Court Overlooks the Flaw in Timothy Gallegos'**
**Fourth Amendment Claim, He Cannot Show Deputy Gallegos**
**was Acting Under Color of Law to Establish a Section**
**1983 claim.**

Assuming for the sake of argument that the Court were able to overlook the fatal flaw in Timothy Gallegos' Fourth Amendment claim that there was no seizure, he still could not meet the two essential elements required in order to establish a proper Section 1983 claim, to wit: 1) the conduct must be committed under color of state law; and 2) the conduct must result in a denial of constitutional rights. *Rivera v. Bates*, No. CIV 12-0473 JB/RHS, 2014 U.S. Dist. LEXIS 94131, at *64 (D.N.M. June 21, 2014). *See also*: *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995), *citing Chongris v. Board of Appeals*, 811 F.2d 36, 40 (1st Cir.); *Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 125 (1st Cir. 1999). "Under Section 1983, liability attaches only to conduct occurring under color of law." *Rivera v. Bates*, No. CIV 12-0473 JB/RHS, 2014 U.S. Dist. LEXIS 94131, at *66 (D.N.M. June 21, 2014), *citing Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988), quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). "Accordingly, at a base level, to find that an action was taken under color of state law, the court must find that "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d at 1447 (*quoting Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). It is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995).

The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty. Instead one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties. *David v. City and Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) (internal citations omitted), *quoting Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)).

With the exception of the use of a taser*, Martinez v Colon* is a case most analogous to the case at hand. In *Martinez*, an on-duty police officer began taunting another police officer as he arrived at the police station to report for duty. The defendant in *Martinez* followed plaintiff around the station, calling him "pretty boy" and pointed his gun several times at plaintiff's genital area, until eventually the gun fired and maimed the plaintiff. As in the present case, the parties in *Martinez* were both on duty, wearing their uniforms and at their place of employment when the incident occurred. Despite these facts, the *Martinez* Court held that the defendant's actions were not taken under color of law: "Here, the record is transpicuously clear that throughout the course of Martinez's ordeal Valentin did not exercise, or purport to exercise, any power (real or pretended) possessed by virtue of state law. To the contrary, Valentin was bent on a singularly personal frolic: tormenting an acquaintance. Though on duty and in uniform, Valentin's status as a police officer simply did not enter into his benighted harassment of his fellow officer. Hazing of this sort, though reprehensible, is not action under color or pretense of law." *Martinez v Colon*, at 987.

The Court in *Martinez* also stated that it did not think it was "reasonable to hold that every use of a policeman's gun, even in the course of purely personal pursuits, creates a cause of action under section 1983." *Id.*  Similarly, the Third Circuit has held that the "unauthorized use of a police-issue nightstick is simply not enough to color [a] clearly personal family dispute with the imprimatur of state authority".  *Barna v. City of Perth Amboy, 42 F.3d 809, 817-818 (3d Cir. 1994).*

Here, Deputy Gallegos' actions are not colored by state law just because he was using a county-issued taser and dressed in uniform at the time in question. Instead, the Court must examine the nature and circumstances of his conduct and the relationship of that conduct to the performance of his official duties. *David v. City and Cnty. of Denver*., 101 F.3d at 1353.

The courts have distinguished cases like *Martinez* from situations where the police officer in question has either stated that he is a police officer before taking the subject action, shown his badge, or otherwise been engaged in the performance of his duties, such as during a stop or during a hot pursuit. *See Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 44 (1st Cir. 1999); *Parrilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 448-50 (1st Cir. 1997). Here, Deputy Gallegos' use of the taser was not in furtherance of his assigned duties as a deputy, but rather as an attempt to joke with Timothy Gallegos, none of which is sufficient to establish acting under color of state law in order to establish a claim under Section 1983. Deputy Gallegos did not show his badge, he did not use his status as a deputy in furtherance of his horseplay, and he was not engaged in an assigned duty when he pulled the taser and pointed it at Timothy Gallegos' groin.[1]   Finally, the second element of a

---

[1] A number of courts have concluded that "horseplay" or conduct similar to horseplay by government employees while on duty is not state action under color of law. *See Haines v. Fisher,* 82 F.3d 1503, 1508 (10th Cir. 1996) (on-duty police officers who staged a robbery of a convenience store as a practical joke on an acquaintance who worked there were not acting under color of law because they did not use their state authority to carry out their plan even though the officers used a number of items of police property during the prank); *Harris v. Rhodes,*94 F.3d 196, 197 (5th Cir. 1996) (on-duty prison maintenance worker punched an inmate after the inmate and another inmate were joking with one another, and the inmate said something that the maintenance worker took offense to. The Fifth Circuit ruled that "horseplay," which involves a "purely private aim and no misuse of state authority," is not action under color of law.); *Townsend v. Moya*, 291 F.3d 859, 861-62 (5th Cir. 2002) (finding that an on-duty prison guard who cut an inmate with a knife during a game called "come on" was not acting under color of law); *Molera v. City of Nogales*, 2013 WL 4804292 at *5 (D. Ariz. 2013) (concluding that an on-duty police officer who assaulted a fellow officer with a department issued taser when he unholstered his taser and held it near the officer's genitals, prompting the officer to remark, "if you are going to take it out, use it," did not act under color of law because "no reasonable juror could infer that [the defendant] was pretending to act in his official capacity when he tased the plaintiff" ); *Morton v. City of Albany*, 2009 WL 2568595 at **5-6 (N.D.N.Y. 2009) (holding that an on-duty officer did not act under color of law when he pointed his gun at his subordinate civilian employee during an incident which the court described as "reckless horseplay with weapons" while on duty); *Washington-Pope v. City of Philadelphia*, 979 F. Supp. 2d 544, 588 (E.D. Pa. 2013) (finding no color of law where on-duty officer pointed his service weapon at his partner's temple during an argument in their patrol vehicle over whether the officer had taken his diabetes medication). *But see Givens v. O'Quinn*, 121 Fed. Appx. 984 (4th Cir. 2004) (finding state action requirements satisfied in a hazing incident where an employee was stripped, his genitals taped to his leg and photographed, and the photographs were then circulated to fellow employees).

proper Section 1983 claim requires that the conduct must result in a denial of constitutional rights. Here, because there was no seizure, there was no violation of constitutional rights.

Thus, even if the Court were to overlook the initial flaw with Timothy Gallegos' Fourth Amendment excessive force claim, he would be unable to establish either of the two required elements of a Section 1983 claim, entitling Deputy Gallegos to qualified immunity as to such claim.

## II.   Timothy Gallegos Fails to Establish a Fourteenth Amendment Claim to Bodily Integrity.

### 1.   Timothy Gallegos' Fourteenth Amendment claim fails because the U.S. Supreme Court has declined to extend substantive due process protections to safe working conditions, and because he cannot show he was restrained in any way.

Timothy Gallegos attempts to "cure" the fatal defect in his Fourth Amendment excessive force claim by adding a second claim under Count I for bodily integrity under the Fourteenth Amendment. However, this claim is also not well taken.

The principle of bodily integrity is long- and well-established in the law. "[N]o right is held more sacred, or is more carefully guarded, by the common law than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific Ry. Co. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 35 L. Ed. 734 (1891). Still, "the Supreme Court has recognized a liberty interest in bodily integrity in only very limited circumstances involving such things as abortions, . . . end-of-life decisions, . . . birth control decisions, . . . and instances where individuals are subject to dangerous or invasive procedures where their personal liberty is being restrained." *Moore v. Guthrie*, 438 F.3d 1036, 1039-40 (10th Cir. 2006).

The Supreme Court has declined to extend substantive due process protection to safe working conditions. In *Collins v. City of Harker Heights,* the Supreme Court held that substantive due process was not a guarantor of workplace safety: "Neither the text nor the history of the Due

Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992).

Additionally, in order to establish a claim for bodily integrity under the Fourteenth Amendment, Timothy Gallegos is required to show that he was, in some way, restrained when he suffered the bodily harm complained of. *Ruiz v. City of Brush*, Civil Action No. 05-cv-00897-EWN-CBS, 2006 U.S. Dist. LEXIS 47254, at *30 (D. Colo. June 30, 2006). *Ingraham* and *Youngberg,* two other Supreme Court cases, contemplate situations in which plaintiffs suffered bodily harm while their liberty was restrained. *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977); *Youngberg v. Romeo*, 457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982).

Here, Timothy Gallegos' claim does not contemplate abortion, an end-of-life decision, or birth control decision. His liberty was also not restrained while subject to dangerous or invasive procedures. Instead, he alleges a claim for violation of his bodily integrity based on an injury suffered during work.  The Supreme Court has declined to extend substantive due process protection to such claims. Accordingly, Deputy Gallegos is entitled to qualified immunity as to this claim.

### 2. The conduct complained of does not shock the conscience in any event, and Timothy Gallegos' claim must fail.

Timothy Gallegos is unable to show that the conduct complained of "shocks the conscience", and therefore his claim fails, in any event. The "ultimate" standard for determining whether there has been a substantive due process violation is "whether the challenged government action shocks the conscience of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). It is well settled that negligence is not sufficient to shock the conscience. *Ruiz v. McDonnell*, at 1184. Moreover, "'a plaintiff must do more than show that the government actor intentionally or

recklessly caused injury to the plaintiff by abusing or misusing government power.'" *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (*quoting Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)). Here, Deputy Gallegos' actions were negligent at best and are not sufficient to shock the conscience. Deputy Gallegos is therefore entitled to qualified immunity as to said claim.

> **III.**    **The Facts Alleged in the Complaint Do Not Make Out a Violation of Plaintiff's Right to Equal Protection.**
>
> > **1.**    **The Complaint Does Not Allege Deputy Gallegos Was Acting Under Color of State Law.**

The Fourteenth Amendment provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." *Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008). Section 1983 creates a cause of action against individuals who violate the Fourteenth Amendment while acting "under color of state law." *See* 42 U.S.C. § 1983; *Jojola v. Chavez,* 55 F.3d 488, 492 (10th Cir.1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). The defendant's authority may be actual or apparent. *Jojola,* 55 F.3d at 493. However, "it is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.' " *Id.* at 494.

The Complaint does not make out a claim for violation of Timothy Gallegos' right to equal protection because it does not allege Deputy Gallegos was acting under color of state law when he deployed the Taser into Timothy Gallegos' groin.  Moreover, the Complaint does not allege facts to support such a conclusion.  There is no allegation that Deputy Gallegos was Plaintiff's supervisor;

rather, the parties did not even work at the same location.   Timothy Gallegos alleges Deputy Gallegos drove his patrol car onto the property of the Detention Center in Tierra Amarilla where Plaintiff worked.   (Complaint ¶ 9).   Deputy Gallegos honked his horn so that he could enter the property.   (*Id*. ¶ 10).   Timothy Gallegos approached Deputy Gallegos' vehicle to assist him.   (*Id*. ¶ 11).   As he approached, Plaintiff said to Deputy Gallegos "stop honking your horn at my jail."   (*Id*. ¶ 12).   Deputy Gallegos responded this isn't your jail.   (*Id*. ¶ 13).   Immediately thereafter, Deputy Gallegos deployed the taser.   (*Id*. ¶¶ 14-15).   These alleged facts indicate Deputy Gallegos and Timothy Gallegos did not even work at the same location, and in no way establish or imply that Deputy Gallegos was Timothy Gallegos' supervisor.   The Tenth Circuit has rejected sexual harassment claims in which the defendant was not the victim's supervisor and did not otherwise exercise authority over the victim in some other way.   *See Woodward v. City of Worland,* 977 F.2d 1392, 1400-01 (10th Cir.1992); *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994).   Without facts to suggest the exercise of state authority, Timothy Gallegos cannot establish the state action necessary to support his Fourteenth Amendment claim, and Deputy Gallegos is qualifiedly immune from suit.   *See Screws v. United States*, 325 U.S. 91, 111 (1945) (holding that § 1983 does not pertain to the "personal pursuits" of government officials); *Patterson v. County of Oneida*, 375 F.3d 206, 230 (2d Cir. 2004) (observing that claims of harassment by "nonsupervisory co-workers" have been construed by other circuits as "personal-frolic hazing or horseplay and not as state action"); *Hoit v. Capital Dist. Transportation Auth.*, 2020 WL 1514754, at *3 (2d Cir. Mar. 30, 2020).

### 2.   The Complaint Does Not Allege Deputy Gallegos Intentionally Discriminated Against Plaintiff Because of His Gender.

Sexual harassment is a form of actionable sex discrimination under the equal protection clause. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999). To state a claim for sexual harassment in violation of the equal protection clause, the Complaint must contain

facts from which it may be plausibly inferred that the defendant engaged in intentional discrimination. *Huffman v. City of Prairie Village, Kan.*, 980 F.Supp. 1192, 1205 (D. Kan. 1997); *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent[.]"); *see also Wood v. City of Topeka, Kan.*, 90 F.Supp.2d 1173, 1188 (D. Kan. 2000) ("courts have distinguished sexual harassment claims under Title VII and § 1983. [Title VII] focuses on whether the discrimination was severe and pervasive enough to alter the terms and conditions of employment. Section 1983 claims focus on whether the discrimination was intentional."). This requires the plaintiff to plead facts to show he was "the object of harassment *because of h[is] gender.*" *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (emphasis in original) (citing *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998)). Harassment alone, however pervasive and severe, is not enough to sustain a *gender* harassment claim. *Id.; Bolden v. PRC Inc.,* 43 F.3d 545, 551 (10th Cir.1994) ("General harassment if not racial or sexual is not actionable.").

A plaintiff may establish intentional discrimination "either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Khalik*, F.3d at 1192 (internal citation omitted). In either case, the Complaint must contain facts from which an inference of gender-based discrimination can be made. *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).  The plaintiff may raise an inference of discrimination by pleading facts to show similarly-situated employees were treated differently. *Cf. Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998); *Burke v. New Mexico*, 696 Fed.Appx. 325, 330 (10th Cir. Jun. 8, 2017); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (noting that equal protection "is essentially a direction that all persons similarly situated should be treated alike"); *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 934-35 (10th Cir. 2015).

Here, the Complaint does not plausibly allege Deputy Gallegos engaged in conduct that was intentionally discriminatory.  The Complaint alleges Sheriff Lujan created a work environment ripe for male-on-male sexual harassment by cultivating a culture of toxic masculinity.  (Complaint ¶ 79).  However, the only facts pled in the Complaint to support this contention are that on one occasion, Deputy Gallegos pointed his taser at Timothy Gallegos' male genitalia and deployed it into his groin area.  (*Id*. ¶ 76).    The Complaint does not allege Deputy Gallegos pointed a taser at any female employee's genitalia or deployed a Taser into any female employee's groin area.  However, it also does not allege Deputy Gallegos undertook these actions toward any other male employee, or that he had previously engaged in any similar conduct.  Nor does the Complaint allege the activity was preceded by any gendered or sexualized comments, toward Timothy Gallegos or toward any other employee for that matter.  The only statements identified in the Complaint are Timothy Galleogos' own instruction to Deputy Gallegos to "stop honking your horn at my jail" and Deputy Gallegos' alleged response "this isn't your jail."  The facts alleged in the Complaint are insufficient as a matter of law to support a plausible inference of intentional, gender-based harassment.  Accordingly, the Complaint does not state a claim for violation of Timothy Gallegos' right to equal protection, and Deputy Gallegos is entitled to qualified immunity as to said claim.

**IV.**      <u>**Timothy Gallegos' Right to Equal Protection Was Not Clearly Established.**</u>

Deputy Gallegos is also entitled to qualified immunity because Timothy Gallegos had no clearly established right to be free from same-sex sexual harassment under the Equal Protection clause. Determining whether an allegedly violated right was "clearly established" depends on whether "[t]he contours of the right [were] sufficiently clear that every reasonable official would understand that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts

must have found the laws to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotations omitted). While the plaintiff need not locate "a case directly on point," nevertheless "existing precedent must have placed the statutory or constitutional questions beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The Supreme Court has "repeatedly told courts. . .  not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "As the Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id.* (internal citation omitted). Otherwise '[p]laintiffs would be able to convert the law of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S.Ct. 548, 552 (2017).

The Complaint cites to *Oncale v. Sundowner Offshore Service, Inc.*, 523 U.S. 75 (1998), for the proposition that it was clearly established at the time of the events alleged in the Complaint that "same-sex sexual harassment between male employees" is "actionable."   (Complaint ¶ 77). However, *Oncale* is not on point. That case involved an alleged violation of Title VII by a private employer. The Court was not asked to consider whether the same facts gave rise to a violation of the equal protection clause. The Supreme Court has yet to decide whether same-sex sexual harassment gives rise to a claim for violation of the Equal Protection clause against a public employee.

Similarly, there does not appear to be any Tenth Circuit authority addressing the issue. The Eleventh Circuit has held that *Oncale*'s recognition of a same-sex sexual harassment claim against a private employer under Title VII did not fairly put public employees on notice that such conduct clearly violated a federal *constitutional* right. *Snider v. Jefferson State Community College*, 344 F.3d 1325 (11th Cir. 2003). In that case, a male supervisor asserted a qualified immunity defense to

male employees' claims of sexual harassment.  In affirming the district court's entry of summary judgment for the supervisor, the Eleventh Circuit noted "Title VII originally was created to reach conduct that the Constitution did *not* reach; and the statute and Constitution are not always concurrent."  *Id*. at 1328 (emphasis in original).  This is so even though the elements of a Title VII claim are the same as the elements of an Equal Protection claim.  *Id*. at 1327 n. 2.  The court went on to acknowledge that "[n]either the Supreme Court's decision in *Oncale*, . . . nor [existing Eleventh Circuit precedent], provided clear notice to government officials that same-sex sexual harassment violated the Equal Protection clause."  *Id*. at 1329.

> A male supervisor sexually harassing male employees engages in contemptible conduct.  But not all contemptible conduct violates the Constitution.  We cannot say that the Equal Protection Clause of case law [existing at the time of the events alleged in the complaint] provided Defendants with fair and clear warning that a male supervisor sexually harassing male employees would violate the employees' federal constitutional rights.  Although officials, when the preexisting law applies with obvious clarity, can be put on notice that their conduct violates established law even in novel factual circumstances, we stress that officials cannot be expected to predict the future course of constitutional law.  Because the pre-existing case law available to Defendants at the time of the alleged harassment did not make apparent that the Equal Protection Clause protected against same-sex sexual harassment, Defendants are entitled to immunity.

*Id*. at 1330 (citation and internal quotation marks omitted).  There does not appear to be a clear weight of authority recognizing a claim for same-sex sexual harassment under the Equal Protection clause.  The Eleventh Circuit in *Downing v. Bd. of Trustees of Univ. of Alabama*, 321 F.3d 1017 (11th Cir. 2003), held the Equal Protection clause does, in fac, prohibit same sex sexual harassment.  However, the court's opinion was withdrawn on January 5, 2004.  In 2010, Judge Browning avoided deciding whether male-on-male sexual harassment would involve equal protection concerns.  *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1076 (D.N.M. 2010).  With no Supreme Court authority or Tenth Circuit decision on point, and no discernible weight of authority from other circuits, the law was not clearly established.  For this reason as well, Deputy Gallegos is entitled to qualified immunity as to said claim.

21

**V.**     **Without an Underlying Constitutional Violation, Timothy Gallegos has no Federal Claim Against the County of Rio Arriba or Sheriff Lujan.**

Claims against a municipality for municipal liability are not actionable in the absence of an underlying constitutional violation. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002), citing, *Hinton v. City of Elwood*, 997 F.3d 774, 782 (10th Cir. 1993).  Likewise, a county or a sheriff in his official capacity cannot be held "liable for constitutional violations when there is no underlying constitutional violation by any of its officers." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009), quoting, *Olsen*, *supra*.

As stated previously, Deputy Gallegos did not commit a constitutional violation against Timothy Gallegos. As a consequence, no federal claims lie against the County or Sheriff Lujan for municipal/supervisory liability.

**VI.**     **Timothy Gallegos' State Law Battery Claim is Barred By the Exclusivity Provisions of the New Mexico Worker's Compensation Act.**

The New Mexico Tort Claims Act waives immunity from suit for battery claims against law enforcement officers such as Deputy Leon Gallegos.  NMSA 1978 § 41-4-12 ("[t]he immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from . . . battery . . . when caused by law enforcement officers while acting within the scope of their duties.").  Here, however, the claimant, Timothy Gallegos, is an employee of Rio Arriba County who is receiving worker's compensation benefits for injuries he states he received from the incident.

The New Mexico Worker's Compensation Act states in pertinent part:

> The right to compensation provided for in this act [Chapter 52, Article 1 NMSA] in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:
>
> A.     at the time of the accident the employer has complied with the provisions thereof regarding insurance;

B.     at the time of the accident, the employee is performing services arising out of and in the course of his employment; and

C.     the injury or death is proximately caused by accident arising out of and in the course of his employment and not intentionally self-inflicted.

NMSA 1978, § 52-1-9.  Once the Worker's Compensation Act provides a remedy, the Act is exclusive, and a claimant has no right to bring an action in common law negligence against his employer.  *Galles Chevrolet Co. v. Chaney*, 1979-NMSC-027, ¶¶ 4-9, 92 N.M. 613, 593 P.2d 59, citing, *Mountain States Tel. & Tel. Co. v. Montoya*, 1978-NMSC-057, 91 N.M. 788, 581 P.2d 1283.

Battery is considered to be an intentional tort and is commonly referred to as an enumerated act or tort under Section 41-4-12 of the Tort Claims Act.  *See, e.g., Milliron v. County of San Juan*, 2016-NMCA-096,  ¶ 18, 21 384 P.3d 1089, citing NMSA 1978, § 30-3-4 ("Battery 'is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner.  A tortfeasor is liable for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results'". . .  'Because Appellant did not suffer a battery, or any other enumerated tort, Appellees' immunity from tort liability granted by Section 41-4-4(A) is not waived on this theory.'").  But "the mere negligence of a law enforcement officer is insufficient to waive the tort immunity granted by Section 41-4-1(A) unless such negligence results in one of the torts enumerated in Section 41-4-12 or a deprivation of a statutory right."  *Id.* at ¶ 10, citing *Blea v. City of Espanola*, 1994-NMCA-008, ¶ 12, 117 N.M. 217, 870 P.2d 755.

One would think that a cause of action for battery as alleged by Timothy Gallegos herein would not be barred by worker's compensation exclusivity because a battery, by its very definition, cannot be considered "accidental."  But the New Mexico Court of Appeals has held otherwise.  In *Griego v. Patriot Erectors Inc.,* 2007-NMCA-080, 141 N.M. 844, 161 P.3d 889, the issue was

23

whether an employee who was punched in the face by a fellow employee could seek worker's compensation benefits against his employer for injuries he sustained therefrom.   The employer argued that because intentional torts are not within the scope of the Worker's Compensation Act, the employee's injury could not be considered accidental, entitling him to compensation benefits. *Griego*, 2007-NMCA-080 at ¶ 11, citing *Delgado v. Phelps Dodge Chino, Inc.,* 2001-NMCA-034, ¶ 30, 131 N.M. 272, 34 P.3d 1148.  The Court of Appeals, however, held that it is only the employer's or employee's intentional or willful conduct that would place an incident outside the scope of the Act.  It concluded that an employee intentionally injuring another employee is not the intentional conduct of the employer.  *Id.*  Thus, the Court of Appeals concluded that from the injured employee and employee's perspective, the incident was "accidental."  Therefore, the employee injured by being punched by his fellow employee was entitled to workers' compensation benefits.  *Id*. at ¶ 12,

Here, while Deputy Gallegos did not intend to batter Timothy Gallegos, it matters not that Timothy Gallegos alleges otherwise.  He sustained an "accidental" injury under *Griego*, bringing the incident within the Worker's Compensation Act, which is his exclusive remedy.  His battery claim should therefore be dismissed as a matter of law. And for this reason, no claim can be asserted against the County of Rio Arriba for *respondeat superior* liability in the absence of an underlying actionable tort for which immunity has been waived under the Tort Claims Act. *McDermitt v. Corrections Corp. of Am.*, 1991-NMCA-034, 112 N.M. 247, 814 P.2d 115 (Ct. App. 1991).

### VII.   Timothy Gallegos is Barred from Filing a Claim for Same Sex Discrimination Because He did not File His Claim of Discrimination with EEOC Within 300 Days of the Incident. This Court Therefore Does Not Have Subject Matter Jurisdiction to Hear Any Potential Claim for Discrimination.

Timothy Gallegos' citation to *Oncale* is a tacit admission that his claim is in reality a claim of discrimination, not a claim for denial of equal protection. A claim for discrimination falls within

Title VII of the Civil Rights Act in terms of filing requirements and exhaustion of administrative remedies.

Before commencing a Title VII action in a state like New Mexico, which has an agency that has the power to investigate employment discrimination, i.e., the New Mexico Department of Labor, Human Rights Division, "a plaintiff must first exhaust administrative remedies by filing a claim of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice." *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1090 (D.N.M. 2011), citing, *Castaldo v. Denver Public Sch.*, 276 Fed. Appx. 839, 841 (10th Cir. 2008) (citing 42 U.S.C. § 2000e-5 (e) (1); 42 U.S.C. § 12117 (a)). In the absence of exhausting administrative remedies, this Court has no subject matter jurisdiction to hear any claim for discrimination. *Id.*

Timothy Gallegos has not filed a claim for discrimination with the EEOC. Three hundred days to do so expired on March 30, 2020. Any claim for discrimination is thus time barred, and this Court would have no subject matter jurisdiction to hear such a claim if it was brought by way of amendment by Mr. Gallegos. *Id.*

### VIII.   Timothy Gallegos Has No Standing to Bring a Claim for Loss Of Consortium.

"A loss of consortium claim is derivative of another claim. A 'derivative action' is '[a] lawsuit arising from an injury to another person, such as a husband's action for loss of consortium arising from an injury to his wife caused by a third person.' As such, the party claiming a loss of consortium is never the same person who suffered the tort that caused the loss of consortium.'" *Thompson v. City of Albuquerque*, 1997-NMCA-003, ¶ 17, 386 P. 3d 1015, citing, *Archer v. Roadrunner Trucking, Inc.*, 1997-NMSC-003, ¶11, 122 N.M. 703, 930 P. 2d 1155 and *Black's Law Dictionary* 538 (10th Ed. 2014). Timothy Gallegos was the person allegedly injured by the tort of Deputy Gallegos. He has no standing or ability to bring a claim for loss of consortium for himself.

## IX.    <u>CONCLUSION</u>

For the reasons stated, the Defendants are entitled to summary judgment on all claims brought by Timothy Gallegos.

Respectfully submitted,

BRENNAN & SULLIVAN, P.A.

*/s/ Gabriela Delgadillo*
James P. Sullivan
Gabriela Delgadillo
***Attorneys for Defendants Board of County***
***Commissioners of County of Rio Arriba***
***and James Lujan***
128 E. de Vargas Street
Santa Fe, NM  87501-2702
(505) 995-8514
jamie@brennsull.com
gabriela@brennsull.com

YLAW, P.C.

**/s/ Robert W. Becker**
Robert W. Becker
***Attorney for Defendant Leon Gallegos***
4908 Alameda Blvd NE
Albuquerque, NM  87113-1736
(505) 266-3995
rbecker@ylawfirm.com

**I HEREBY CERTIFY** that on the 1st day of May, 2020, I filed the foregoing electronically through the CM/ECF filing system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joseph P. Kennedy
Shannon L. Kennedy
Kennedy Kennedy & Ives, PC
1000 2nd Street, NW
Albuquerque, NM  87102
(505) 244-1400
jpk@civilrightslaw.com
slk@civilrightslaw.com
***Attorneys for Plaintiff***

***/s/ Robert W. Becker*** _____